UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────
UNITED STATES OF AMERICA,

                Plaintiff,

      -against-

JULIO ACOSTA DE VARGAS,

                Defendant.
─────────────────────────────────

**MEMORANDUM & ORDER**
**08-CR-115 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Defendant Julio Acosta De Vargas' motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (Mot. for Comp. Release ("FSA Mot.") (Dkt. 657)), and petition for habeas corpus pursuant to 28 U.S.C. § 2255 (Pet. for Relief ("Pet.") (Dkt. 630)). For the reasons set forth below, De Vargas' motion for compassionate release is DENIED and his petition for habeas corpus is DENIED.

## I. BACKGROUND

### A. Crime and Sentencing

Julio Acosta De Vargas was a member of a crew involved in various robberies in New York, Pennsylvania, and North Carolina. (Gov't Opp. to Mot. (Dkt. 662) at 1.) On October 16, 2006, one of those robberies escalated to the kidnapping of Luis Sifuentes. (*Id.* at 2.) De Vargas and other members pretended to be police officers and pulled Sifuentes over while he was driving. (Presentence Investigation Report ("PSR") (Dkt. 426) ¶ 17.) They then drove Sifuentes to a house where, out of De Vargas' presence, he was assaulted and eventually killed. (Gov't Opp. to Mot. at 2.)

De Vargas had been serving a 64-to-86-month sentence in North Carolina for a separate crime,[1] when on August 4, 2011, he was turned over to federal custody in relation to Sifuentes' death. (PSR ¶ 34.) On November 1, 2013, De Vargas pleaded guilty to the firearm-related murder of Sifuentes in violation of 18 U.S.C. § 924(j), (Gov't Opp. to Mot. at 3; *see also* Mem. in Supp. (Dkt. 680) at 2), and on December 12, 2018, was sentenced to a term of 180 months imprisonment, to run concurrently with the North Carolina sentence. (*See* Dec. 12, 2018 Minute Entry; Judgment (Dkt. 566) at 2.) This 180-month sentence constituted a downward variance from De Vargas' guidelines range of 262 to 327 months. (Ex. 1 to Gov't Opp. to Mot. ("Sentencing Tr.") (Dkt. 662-1) at ECF 27.) At sentencing, the court explained this variance as follows:

> I have decided to provide the defendant with a variance from the guideline sentence ... because the Court believes that [De Vargas'] limited role in the circumstances of the murder and the limitations on his intellectual acumen and the fact that he has served in a federal detention [] under circumstances that are much more limiting than those he would be subject to if he had been designated to a facility and had the opportunity to make improvements in his vocational skills and his education and his other activities, all of those auger in favor of a variance in this case.

*Id.*

### B. Procedural History for Habeas Corpus

On August 21, 2020, De Vargas filed a petition for release pursuant to 18 U.S.C. § 2255, arguing that he received ineffective assistance of counsel in violation of the Sixth Amendment. (*See*

---

[1] De Vargas had been sentenced in North Carolina for attempted first degree kidnapping on August 6, 2007. (*See* PSR ¶ 34.)

Pet. at 5.) Specifically, De Vargas argues that he was entitled to a downward departure pursuant to Section 5K2.23 of the Sentencing Guidelines, and his counsel at sentencing unreasonably failed to move for such a departure. (*Id.*) The Government filed an opposition on October 7, 2020. (*See* Gov't Opp. to Pet. (Dkt. 633).)

### C. Procedural History for Compassionate Release

On June 14, 2021, De Vargas filed a compassionate release application with the warden of FCI Big Spring. (*See* FSA Mot. at ECF 3.) This request was denied on July 20, 2021. (Ex. 3 to Gov't Opp. to Mot. (Dkt. 662-1) at ECF 34.) On July 15, 2021, De Vargas filed a *pro se* motion for sentence reduction under the First Step Act, requesting that the Court grant compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See generally* FSA Mot.) De Vargas argued that he should be released because his mental and psychological issues and the COVID-19 pandemic together constitute "extraordinary and compelling reasons." (*Id.* at ECF 3-5.) In response to De Vargas' motion, the Government filed a letter in opposition on September 29, 2021. (*See generally* Gov't Opp. to Mot.) The court subsequently appointed counsel, who submitted a letter in further support of De Vargas' motion for compassionate release on January 17, 2023. (*See generally* Dkt. 665; Mem. in Supp.) The Government filed a further opposition on February 16, 2023. (*See generally* Feb. 16, 2023 Gov't Opp. ("Second Gov't Opp. to Mot.") (Dkt. 684).) De Vargas is currently incarcerated at FCI Oakdale II, a low security federal correctional institution. (Ex. C to Mem. in Supp. (Dkt. 680-1) at ECF 8.) His projected release date is February 19, 2025. (Mem. in Supp. at 1.)

## II. DISCUSSION

### A. Habeas Petition

The Government concedes that De Vargas' habeas petition was timely filed, instead arguing against the merits of his claim for ineffective assistance of counsel. (Gov't Opp. to Pet. at 8-9.) Such claims are analyzed under a two-step inquiry: (1) whether the defendant's counsel provided representation which "fell below an objective standard of reasonableness;" and (2) whether any error, "even if professionally unreasonable," had an effect on the judgment. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984).

De Vargas' petition for habeas argues that he was entitled to a reduction pursuant to Section 5K2.23 of the Sentencing Guidelines, for which his attorney unreasonably failed to move. (Pet. at ECF 5.) Section 5K2.23 provides that "[a] downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 ... would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." U.S. Sent'g Guidelines Manual § 5K2.23 (U.S. Sent'g Comm'n 2021). Section 5G1.3(b), in turn, provides that a sentence should be adjusted to account for any period of imprisonment already served for "another offense that is relevant conduct to the instant offense of conviction[.]" *Id.* § 5G1.3(b). Relevant conduct is defined as

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity ... all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that

4

> criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*Id.* § 1B1.3.

When convicted, De Vargas was serving a state sentence in North Carolina for attempted first-degree kidnapping arising from a 2005 incident, and he argues that this constituted "relevant conduct" such that he was entitled to a Section 5K2.23 reduction. (Memo. of Law in Supp. of Pet. (Dkt. 630-1) at ECF 2-3.) Failure to raise this issue caused prejudice, he contends, because he would have received a shorter sentence had his attorney moved for a reduction on this basis. (*Id.*)

But De Vargas was not eligible for a Section 5K2.23 reduction because the 2005 attempted kidnapping was not "relevant conduct" to the 2006 killing of Sifuentes. Indeed, the issue was raised at De Vargas' sentencing as a consideration (rather than as a request for a formal departure), and the court concluded that the 2005 conduct was disparate enough to not constitute part of "the same course of conduct or common scheme or plan." (Ex. 1 to Gov't Opp. to Pet. (Dkt. 633-1) at 12-13.) Accordingly, it was not unreasonable for De Vargas' counsel to fail to move for a reduction pursuant to Section 5K2.23, to which he was not entitled, nor did this prejudice him, as the motion would have been unsuccessful in any event.

Accordingly, De Vargas' Section 2255 petition is DENIED.

### B. Compassionate Release

De Vargas also moves to reduce his sentence to time served under 18 U.S.C. § 3582(c). (Mem. in Supp. at 1.) He argues that the COVID-19 pandemic, his mental and psychological issues, the neglect of these issues by the BOP, and his rehabilitation together

constitute extraordinary and compelling reasons justifying a sentence reduction. (*See generally* Mem. in Supp.) The Government argues that De Vargas has failed to establish extraordinary and compelling reasons for release, and has failed to show that the sentencing factors in § 3553(a) would be served by granting compassionate release. (*See generally* Gov't Opp. to Mot.)

On a motion for compassionate release, the petitioner must first show that he has "'fully exhaust[ed] all administrative' remedies in requesting relief" from the Bureau of Prisons ("BOP"). *United States v. Goldstein*, No. 18-CR-217 (KMW), 2023 WL 243229, at *1 (S.D.N.Y. Jan. 18, 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)). If administrative remedies have been exhausted, then the petitioner must prove that "extraordinary and compelling reasons warrant" a sentence reduction. *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Finally, if extraordinary and compelling reasons are shown, then the court must determine if the new sentence is warranted in light of "the factors set forth in section 3553(a) to the extent that they are applicable." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

1. Exhaustion of Administrative Remedies

18 U.S.C. § 3582(c)(1)(A) allows defendants to move for compassionate release only after they have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[.]" § 3582(c)(1)(A). A "defendant's failure to exhaust administrative remedies is a 'threshold matter' preventing the court from considering a Section 3582 application." *United States v. Gomez*, No. 95-CR-750 (NGG), 2021 WL 1254549, at *3 (E.D.N.Y. Apr. 5, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229 (JS), 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)). Here, both parties acknowledge that De Vargas exhausted his administrative remedies. He filed a compassionate release application with the warden of FCI Big Springs Correctional Center on June 14, 2021, (Ex. 2 to Gov't Opp. to

6

Mot. (Dkt. 662-1) at ECF 32), which was denied on July 20, 2021. (Ex. 3 to Gov't Opp. to Mot. at ECF 34.) Such a denial of a compassionate release application constitutes exhaustion of administrative remedies. *See, e.g., United States v. Martinez*, No. 03-CR-1049 (NGG), 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) (concluding that warden's denial of compassionate release request "satisfied the exhaustion requirement"); *United States v. Santos*, No. 17-CR-388 (KMW), 2023 WL 34822, at *2 (S.D.N.Y. Jan. 4, 2023) (holding that a defendant satisfied the exhaustion requirement when a warden denied his request and he moved for compassionate release more than thirty days after submitting his request). De Vargas has therefore shown full exhaustion of his administrative remedies and the court can review his motion on the merits.

### 2. Extraordinary and Compelling Reasons and the Applicable Policy Statements

#### a. Medical Issues and COVID-19

In De Vargas' original *pro se* motion for compassionate release, he claimed that he is at greater risk of contracting and dying from COVID-19 because of his health problems, and his "mental and physical state has worsened" as a result. (FSA Mot. at ECF 5.) The supplement filed by De Vargas' counsel clarified that he has contracted Hepatitis C and been diagnosed with Gilbert Syndrome since arriving at the Metropolitan Detention Center ("MDC"). (Mem. in Supp. at 8.) Records from March 2021 reflect that he was diagnosed with tuberculosis. (Ex. 13 to Gov't Opp. to Mot. (Dkt. 662-1) at ECF 75.) De Vargas further argues that he is not receiving sufficient care to deal with his medical concerns. (Mem. in Supp. at 9.)

Although the court is sympathetic to the health issues De Vargas faces, none of his ailments warrant early release from prison.

7

First, available information demonstrates that Gilbert Syndrome does not pose an increased risk of severe COVID-19 complications. According to the Mayo Clinic, Gilbert Syndrome is "a common, harmless liver condition," and like Hepatitis C (discussed further below), is not on the Center for Disease Control and Prevention's ("CDC") list of medical conditions which would warrant concern if someone were to contract COVID-19. *See* Gilbert Syndrome, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/gilberts-syndrome/symptoms-causes/syc-20372811 (last visited March 14, 2023) ("Gilbert Syndrome Overview"); COVID-19: People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 14, 2023) ("CDC Risk Factors"). Although De Vargas also claims that "he has not received care or treatment" for Gilbert Syndrome while in prison, (Mem. in Supp. at 8), the condition "requires no treatment." *See* Gilbert Syndrome Overview. For these reasons, courts addressing Gilbert Syndrome as a basis for compassionate release have concluded that the condition, in light of the COVID-19 pandemic, does not constitute a compelling reason for release. *See, e.g., United States v. Wagner,* No. 18-CR-239 (DSD) (TNL), 2021 WL 1667391, at *4 (D. Minn. Apr. 28, 2021) (holding that a defendant's mild asthma and Gilbert Syndrome, amid the COVID-19 pandemic, "do not rise to the level of extraordinary and compelling circumstances"). The court agrees and concludes that De Vargas' Gilbert Syndrome diagnosis is not an extraordinary or compelling condition warranting release.

Second, the CDC's list of medical issues which create a heightened risk of severe illness from COVID-19 does not mention

Hepatitis C.[2] *See generally* CDC Risk Factors. During the height of the pandemic in 2020, some courts granted compassionate release motions for defendants with Hepatitis C along with more serious medical conditions. *See, e.g., United States v. Brown*, 467 F. Supp. 3d 209, 211-12 (S.D.N.Y. 2020) (finding in June 2020 that a 65-year-old defendant with "HIV, Hepatitis C, hypertension, and partial paralysis from a past stroke" had demonstrated extraordinary and compelling reasons for release); *United States v. Copeland*, No. 02-CR-1120 (FB), 2020 WL 2537250, at *1, 5 (E.D.N.Y. May 19, 2020) (noting that a defendant with hypertension, Hepatitis C, hyperlipidemia, and aortic atherosclerotic disease was "among those most vulnerable" to COVID-19 and granting his release); *United States v. Vondette*, No. 97-CR-1010 (JS), 2020 WL 7402133, at *2-3 (E.D.N.Y. Dec. 17, 2020) (concluding that a defendant established extraordinary and compelling reasons because he suffered from Chronic Obstructive Pulmonary Disease ("COPD"), Hepatitis C, supraventricular tachycardia, and other serious medical conditions). However, at least one court has found Hepatitis C alone to be insufficient to warrant a sentence reduction. *See United States v. Hilliard*, No. 17-CR-35 (VB), 2021 WL 638957, at *1 (S.D.N.Y. Feb. 17, 2021) (asserting that a defendant with Hepatitis C had not been able to provide "credible evidence that this condition subjected [him] to heightened risk of serious complications from COVID-19"). Courts have also recognized that vaccination reduces the risk of contracting the COVID-19 virus and having serious illness. *See, e.g., United States v. Oquendo*, No. 13-CR-357 (KPF), 2023 WL

---

[2] The CDC does specify that Autoimmune Hepatitis is a COVID-19 risk factor. *See* CDC Risk Factors. The difference between Autoimmune Hepatitis and Hepatitis C is that Autoimmune Hepatitis is a chronic ailment with no cure, whereas Hepatitis C is not chronic if treated, and it does have a cure. (Hepatitis, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/hepatitis (last viewed March 30, 2023).)

199609, at *4 (S.D.N.Y. Jan. 17, 2023). Because De Vargas is fully vaccinated, (Exs. 19-20 to Second Gov't Opp. to Mot. (Dkt. 684-1) at ECF 8-12), and his medical records show that treatment has resolved his Hepatitis C, which is now in remission, (Ex. 13 to Gov't Opp. at ECF 75), this condition is not an extraordinary and compelling reason for release.

Third, the CDC does state that tuberculosis could make someone more likely to get very ill from COVID-19. (*See* CDC Risk Factors.) Once again, however, De Vargas' medical reports show that the tuberculosis is latent. (*See* Ex. 13 to Gov't Opp. at ECF 75.) As with Hepatitis C, courts' approaches to tuberculosis for compassionate release purposes have shifted over the course of the pandemic. Most recent decisions no longer believe that having latent tuberculosis is sufficient to be considered an extraordinary and compelling reason for release. *See United States v. Mutimura*, No. 19-CR-592 (LGS), 2022 WL 220079, at *2 (S.D.N.Y. Jan. 25, 2022) (explaining that while some courts previously granted compassionate release in cases where the defendant had latent tuberculosis, "most of those cases were decided prior to the COVID-19 vaccine becoming available, and/or involved defendants with additional, significant risk factors" and many "declined to consider latent tuberculosis an extraordinary and compelling reason"). Moreover, De Vargas refused treatment for his latent tuberculosis in March 2021. (*See* Ex. 13 to Gov't Opp. at ECF 75.) Although it is unclear why De Vargas refused treatment, the availability of such treatment provides an alternative means, aside from release, for him to proactively mitigate his risk. *See Mutimura*, 2022 WL 220079, at *2 (noting that the defendant had declined treatment for latent tuberculosis and quoting a prior court's denial of compassionate release where the "defendant 'declined the opportunity to reduce his risk exposure to COVID-19'") (quoting *United States v. Negron*, No. 11-CR-324

(CS), 2021 WL 3540240, at *1 (S.D.N.Y. Aug. 10, 2021)). Therefore, De Vargas' latent tuberculosis, like his Hepatitis C and Gilbert Syndrome, does not warrant release.[3]

Notably, De Vargas is up to date on his COVID-19 vaccinations. He first received the Johnson & Johnson COVID-19 vaccine in 2021. (Mem. in Supp. at 6-7; Ex. C to Mem. in. Supp. at ECF 7.) He has since gotten two Pfizer booster shots: one in May 2022 and one in January 2023. (Exs. 19-20 to Second Gov't Opp. to Mot. (Dkt. 684-1) at ECF 8-12.) With vaccines accessible to prison inmates, "many courts have denied compassionate release to vaccinated defendants" who seek a sentence reduction because of COVID-19. *United States v. Russo*, No. 92-CR-351 (FB), __ F. Supp. 3d __, 2022 WL 17247005, at *5 (E.D.N.Y. Nov. 28, 2022) (collecting cases); *see also United States v. Jones,* No. 17-CR-214 (CM), 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) (noting that "the risk of COVID-19 for vaccinated individuals is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons" after being vaccinated). It is important to note that "being fully vaccinated does not completely eliminate the risk and danger of contracting COVID-19, as variants, breakthrough infections, and infection rates have risen," *United States v. Watts*, No. 92-CR-767 (KAM), 2023 WL 35029, at *9 (E.D.N.Y. Jan. 4, 2023), but while recent variants may spread "more easily and can cause reinfection among vaccinated individuals, [they are] considered less severe in causing illness and death." *Mayes v. United States*, No. 12-CR-385 (ARR), 2023 WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023). Moreover, FCI Oakdale II, where De Vargas now resides, only has two active inmate cases of COVID-19

---

[3] Nor would it change the court's analysis to consider these conditions, each of which is not a risk factor for severe COVID-19, together, as De Vargas has not provided any information from which the court can conclude that these health issues compound.

and no active staff cases. BOP: COVID-19 Update, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last viewed March 30, 2023). De Vargas would thus not be at a heightened risk for contracting COVID-19 at FCI Oakdale II.

De Vargas also argues that he has "mental and psychological issues" that warrant reducing his sentence. (Mem. in Supp. at 1.) Yet, these issues are not further elaborated on in the motion, nor do medical records show that De Vargas' mental state has worsened due to COVID-19. In fact, a mental health appraisal taken of De Vargas in 2021 found no issues, and when asked about his mood, he responded "bien" (meaning good in Spanish). (Ex. 9 to Gov't Opp. (Dkt. 662-1) at ECF 58.) However, De Vargas may be trying to direct the courts attention to the results of the Neuropsychological Evaluation conducted in 2012 which concluded that De Vargas has "extremely low" levels of "overall intellectual functioning" and "meets the criterion for mild mental retardation." (FSA Mot. at ECF 20.) If this is the case, the argument was already taken into consideration during his initial sentencing, (Ex. 1 to Gov't Opp. to Mot. ("Sentencing Tr.") (Dkt. 662-1) at ECF 27), and the court declines to reevaluate the sentence on the basis of information that was available and considered at sentencing.

Lastly, De Vargas asserts that the pandemic has "made his sentence 'harsher and more punitive than would otherwise have been the case.'" (Mem. in Supp. at 9 (quoting *United States v. Qadar*, No. 00-CR-603 (ARR), 2021 WL 3087956, at *8 (E.D.N.Y. July 22, 2021)).) This is likely true, but general concerns about COVID-19 "are not regarded as extraordinary and compelling reasons for compassionate release." *United States v. Martinez*, No. 03-CR-1049 (NGG), 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022). The conditions of De Vargas' incarceration have also improved as the pandemic has abated. Currently, BOP operations at FCI Oakdale II are at the minimal modifications level, meaning

12

that inmate programing and services have resumed as normal and social distancing is no longer required outside of health facilities. (BOP: COVID-19 Modified Operations Plan & Matrix, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last viewed March 30, 2023).) Thus, as of now, it is unlikely that De Vargas' sentence is more punitive than it would have been pre-pandemic.

Accordingly, as De Vargas has no underlying medical conditions that would cause concern about "serious illness from COVID-19," *United States v. Robinson*, No. 10-CR-789 (NGG), 2022 WL 16924176, at *4 (E.D.N.Y. Nov. 14, 2022), he has failed to prove health-related extraordinary and compelling reasons for release.

### b. Rehabilitation

When making sentencing modifications under 18 U.S.C. § 3582(c)(1)(A)(i), courts have discretion to determine what qualifies as extraordinary and compelling reasons, with one exception: "[r]ehabilitation . . . alone shall not be considered an extraordinary or compelling reason." 28 U.S.C. § 994(t); *see also United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020). Because De Vargas' medical issues in light of COVID-19 do not reach the level of extraordinary and compelling, evidence of rehabilitation is not sufficient to justify a sentence reduction. Accordingly, the court does not address the evidence raised regarding De Vargas' rehabilitation during his term of incarceration.

### 3. Section 3553(a) Factors in Favor of Reduction

Because the court is denying De Vargas' compassionate release motion on the basis of lack of extraordinary and compelling reasons, there is no need to reach the sentencing factors found in 18 U.S.C. § 3553(a). Therefore, the court does not address De Vargas' arguments regarding these factors.

### III. CONCLUSION

For the foregoing reasons, Mr. De Vargas' motion for compassionate release is DENIED and his petition for relief pursuant to section 2255 is DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         April 4, 2023

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

14